### IN THE UNITED STATES EASTERN DISTRICT
### EASTERN DISTRICT OF MISSOURI

**DAWN KEHOE-ROOP,**

    **PLAINTIFF.**

v.

**CITY OF ST. LOUIS,**
    1200 Market Street
    Saint Louis, MO 63103
Serve Registered Agent:
    City Counselor's Office
    1200 Market St. Room 314
    Saint Louis, MO 63103

    **DEFENDANT.**

**Case No.:**

## COMPLAINT

COMES NOW Plaintiff Dawn Kehoe-Roop, by and through the undersigned counsel of record, and for her Complaint against Defendant City of St. Louis hereby states and alleges as follows:

## NATURE OF THE ACTION

1. This is an action for race, age, gender, disability discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C § 2000e *et seq.,* the Age Discrimination in Employment Act of 1967 and the Americans with Disabilities Act against Defendant for unlawfully discriminating against Plaintiff Dawn Kehoe-Roop in the terms and conditions of her employment on the basis of her race, age, gender, and disability, and retaliating against her for engaging in protected activity.

1

## THE PARTIES

2. At all relevant times, Plaintiff was and is an adult, female who was and is a citizen of the State of Missouri.

3. Plaintiff is a former senior command staff member of the City of St. Louis Sheriff's Office, having served as Captain and Commander of Carnahan Courts for over 32 years.

4. Defendant City of St. Louis is a governmental entity, in good standing, with its principal place of business conducted at its municipal offices in St. Louis, Missouri located at 1200 Market Street, Saint Louis, Missouri 63103.

5. Defendant was the employer of Plaintiff during the time she was employed.

6. Defendant City of St. Louis directed and controlled the work of Plaintiff.

## JURISDICTION AND VENUE

7. Original jurisdiction over this suit is conferred on this Court by 28 U.S.C §§ 1331 as it is brought under as it is brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 200e *et seq.* ("Title VII"), the Age Discrimination in Employment Act of 1967 ("ADEA") and the Americans with Disabilities Act ("ADA").

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the unlawful employment practices occurred in and around City of St. Louis, Missouri, and where Plaintiff suffered the unlawful employment practices and the resultant damages.

9. All conditions precedent to jurisdiction have occurred or been complied, in that Plaintiff filed her administrative charges in a timely manner with the Equal Employment Opportunity Commission ("EEOC").  Copies of the charges are attached hereto as Exhibit A.

2

10. The EEOC issued Plaintiff Notices of Right to Sue and this lawsuit is filed within ninety (90) days of issuance. The EEOC found cause for discrimination in this case and proactively engaged in the reconciliation process. Copies of the Notices of Right to Sue are attached as Exhibit B.

11. The U.S. Department of Justice, Civil Rights Division issued Plaintiff Notices of Right to Sue and this lawsuit is filed within ninety (90) days of issuance. Copies of the Notices of Right to Sue are attached as Exhibit C.

### GENERAL ALLEGATIONS

8. Upon information and belief, at all times relevant, Defendant City of St. Louis, through its Sheriff's Office, was and continues to be operating as the chief law enforcement entity of the City of St. Louis, Missouri.

9. On November 16, 1992, Plaintiff was hired by the City of St. Louis Sheriff's Office.

10. Plaintiff continued her employment with the Sheriff's Office for over 32 years until her termination, ultimately achieving the rank of Captain and serving as Commander of Carnahan Courts, one of five units under her supervision.

11. Throughout her 32-year career, Plaintiff served in various capacities including Training Coordinator and maintained an exemplary employment record, receiving numerous commendations and promotions based on merit and performance, and never having been written up or reprimanded for any misconduct during her entire tenure.

12. In July 2019, a new deputy sheriff Alfred Montgomery was hired by the City of St. Louis Sheriff's Office (hereinafter "Montgomery").

13. During Montgomery's employment, Plaintiff, as Training Coordinator, was responsible for ensuring the deputy completed required training and certifications and supervising his work.

3

14. On December 4, 2019, Montgomery engaged in insubordinate conduct toward Sheriff Vernon Betts, repeatedly interrupting the Sheriff and refusing to follow direct orders during a meeting regarding social media policy violations.

15. On December 16, 2019, Montgomery was terminated from employment with the City of St. Louis Sheriff's Office for insubordination and other policy violations, following investigations and recommendations by senior command staff including Plaintiff.

16. Following his termination, Montgomery publicly stated he was terminated "for exercising my 1st amendment right" and vowed to hold those accountable for his termination, including threats to fire everyone involved in his termination.

17. During the 2024 campaign for Sheriff, Montgomery repeatedly made public statements announcing his agenda to terminate supervisors and deputies in order to "cut the budget," targeting senior command staff including Plaintiff.

18. On August 6, 2024, Montgomery won the election for Sheriff of the City of St. Louis, taking office on January 1, 2025.

19. Immediately following his election, Sheriff-Elect Montgomery continued to publicly announce his intention to terminate supervisors and deputies in order to "cut the budget," specifically mentioning he was going to "get rid of all the 'white shirts'" referring to Lieutenants and above.

20. Throughout November and December 2024, the newly elected Sheriff engaged in discriminatory conduct toward Plaintiff and other senior command staff.

21. On December 3, 2024, Plaintiff had an appointment with her primary care physician who completed the necessary paperwork for Family Medical Leave (FMLA) due to Plaintiff's serious medical condition requiring significant medical treatment.

4

22. Plaintiff submitted the required FMLA paperwork to Human Resources on December 4, 2024.

23. On December 4, 2024, at approximately 10:50 am, Sheriff-Elect Montgomery publicly humiliated Plaintiff and other senior command staff by hand-delivering termination letters in the rotunda of the Carnahan Courthouse in plain view of all employees, visitors, defendants, attorneys, and court personnel.

24. The timing of Plaintiff's termination—occurring immediately after submission of medical documentation—demonstrates a direct causal connection between her protected medical condition and her discharge.

25. On December 5, 2024, Sheriff-Elect Montgomery issued a memo titled "IMMEDIATE RELEASE" in which he stated that by terminating experienced, older employees, including Plaintiff, he was making room in the budget to provide substantial raises to young deputies while reducing administrative costs.

26. On December 6, 2024, Sheriff-Elect Montgomery gave media interviews claiming that the high-ranking officials, including Plaintiff, were overpaid and stating the terminations were necessary to "rebalance the budget."

27. On December 31, 2024, Plaintiff returned all equipment to inventory with the Quartermaster. All keys were surrendered to Major Scott Lammert, including Plaintiff's office key for Room 801.

28. On December 31, 2024, a report was filed by an anonymous individual and signed by Deputy Alphonso Hopgood, alleging that Plaintiff had taken a file cabinet on December 20, 2024, demonstrating continued harassment even after termination.

5

29. On January 1, 2025, Montgomery publicly stated that his office would be less "top heavy" and again promised increased salaries for new incoming deputies.

30. Plaintiff was terminated effective January 1, 2025, after 32 years of exemplary service.

31. Plaintiff lost accumulated sick time, vacation time, pension benefits, health insurance, and was unable to work secondary employment which she had done for many years.

32. Following the terminations, the newly elected Sheriff gave media interviews describing the terminated employees as a "racist gang" running the office and made statements suggesting the terminations were motivated by personal retaliation rather than legitimate business reasons.

33. The termination was part of a systematic pattern of discrimination based on race, age, gender, and disability, as well as retaliation for prior employment actions.

34. Plaintiff, by virtue of her race (white), age (over 50 years old), gender (female), and disability, is a member of classes of persons protected by law.

35. At all times relevant herein, the above-named individuals were agents, servants and employees of Defendant City of St. Louis and were acting within the course and scope of their employment.

## COUNT I:
### Race Discrimination – Title VII
### Against Defendant

36. Plaintiff reasserts the allegations set forth in the preceding paragraphs as if fully set forth herein.

37. Plaintiff is white and therefore a member of a protected class under Title VII.

38. Defendant discriminated against Plaintiff in the terms and conditions of her employment.

39. Defendant's conduct constitutes intentional discrimination on the basis of race, with malice or reckless indifference to Plaintiff's federally protected rights.

6

40. Defendant's conduct constitutes disparate treatment and intentional discrimination of Plaintiff based upon her race.

41. Sheriff-Elect Montgomery repeatedly stated his intention to fire all "white shirts" (Lieutenants and above) and publicly made racially charged statements targeting senior white command staff.

42. On December 4, 2024, Montgomery publicly humiliated Plaintiff and other senior command staff by hand-delivering termination letters in the rotunda of the Carnahan Courthouse in plain view of all employees, visitors, defendants, attorneys, and court personnel.

43. Following the terminations, the newly elected Sheriff gave media interviews describing the terminated employees as a "racist gang" running the office, demonstrating that racial animus motivated the terminations.

44. According to news media reports, Montgomery's actions systematically removed numerous white employees from senior positions, prompting allegations of a racial component to the terminations.

45. The pattern of terminations demonstrates race discrimination, as senior white command staff were targeted while employees of other races were retained or promoted.

46. Plaintiff's race actually played a role in and had a determinative influence in Defendant City of St. Louis' disparate treatment of her and the tangible employment actions taken against her, to include her termination.

47. Plaintiff's race was, at the very least, a contributing factor in disparate treatment of her and the tangible employment actions taken against her by Defendant City of St. Louis, to include her termination.

7

48. Management level employees perpetuated the discrimination of Plaintiff based on Plaintiff's race.

49. In addition, management level employees knew or should have known of the discrimination based on Plaintiff's race, yet failed to take appropriate corrective action.

50. As a direct and proximate result of Defendant City of St. Louis' actions and/or omissions, Plaintiff suffered intentional discrimination – based upon her race – at the hands of Defendant City of St. Louis during the course of her employment.

51. As a direct and proximate result of Defendant City of St. Louis' actions and/or omissions, Plaintiff has been, and continues to be, deprived of monetary and non-monetary benefits.

52. As a direct and proximate result of Defendant City of St. Louis' actions and/or omissions, Plaintiff has suffered, and continues to suffer, garden variety emotional distress and other non-medical bill related compensatory damages.

53. By terminating Plaintiff based on her race, Defendant City of St. Louis, in effect, condoned, ratified, and/or authorized the race discrimination against Plaintiff.

54. The conduct of Defendant was intentional, malicious, in conscious disregard for the rights of Plaintiff, and showed complete indifference to or conscious disregard for Plaintiff's rights.

55. Plaintiff is entitled to recover all of her costs, expenses, expert witness fees and attorneys' fees incurred herein.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant City of St. Louis for compensatory damages, punitive damages, attorneys' fees and costs, and for such other and further relief as the Court deems just and proper.

**COUNT II:**
**Age Discrimination – ADEA**
**Against Defendant**

8

56. Plaintiff reasserts the allegations set forth in the preceding paragraphs as if fully set forth herein.

57. Plaintiff is over 50 years of age and is therefore a member of a protected class under the Age Discrimination in Employment Act of 1967.

58. Defendant discriminated against Plaintiff in the terms and conditions of her employment.

59. Defendant's conduct constitutes intentional discrimination on the basis of age, with malice or reckless indifference to Plaintiff's federally protected rights.

60. Defendant's conduct constitutes disparate treatment and intentional discrimination of Plaintiff based upon her age.

61. During the course of Plaintiff's employment, Defendant City of St. Louis' agent, the newly elected Sheriff, made statements about "high ranking officials" who "make too much money," which was a reference to the higher salaries earned by senior employees due to their years of service and experience.

62. On December 5, 2024, Sheriff-Elect Montgomery issued a memo stating that by terminating experienced, older employees, including Plaintiff, he was making room in the budget to provide substantial raises to young deputies while reducing administrative costs.

63. Montgomery publicly stated his intention to hire younger deputies with increased salaries while eliminating positions held by senior, experienced command staff.

64. The termination of Plaintiff, along with other senior command staff with over 30 years of service, while retaining less senior employees, demonstrates a pattern of age discrimination.

65. Plaintiff's age actually played a role in and had a determinative influence in Defendant City of St. Louis' disparate treatment of her and the tangible employment actions taken against her, to include her termination.

66. Plaintiff's age was, at the very least, a contributing factor in disparate treatment of her and the tangible employment actions taken against her by Defendant City of St. Louis, to include her termination.

67. Management level employees perpetuated the discrimination of Plaintiff based on Plaintiff's age.

68. In addition, management level employees knew or should have known of the discrimination based on Plaintiff's age, yet failed to take appropriate corrective action.

69. As a direct and proximate result of Defendant City of St. Louis' actions and/or omissions, Plaintiff suffered intentional discrimination – based upon her age – at the hands of Defendant City of St. Louis during the course of her employment.

70. As a direct and proximate result of Defendant City of St. Louis' actions and/or omissions, Plaintiff has been, and continues to be, deprived of monetary and non-monetary benefits.

71. As a direct and proximate result of Defendant City of St. Louis' actions and/or omissions, Plaintiff has suffered, and continues to suffer, garden variety emotional distress and other non-medical bill related compensatory damages.

72. By terminating Plaintiff based on her age, Defendant City of St. Louis, in effect, condoned, ratified, and/or authorized the age discrimination against Plaintiff.

73. The conduct of Defendant was intentional, malicious, in conscious disregard for the rights of Plaintiff, and showed complete indifference to or conscious disregard for Plaintiff's rights.

74. Plaintiff is entitled to recover all of her costs, expenses, expert witness fees and attorneys' fees incurred herein.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant City of St. Louis for compensatory damages, punitive damages, attorneys' fees and costs, and for such other and further relief as the Court deems just and proper.

**COUNT III:**
**Gender Discrimination – Title VII**
**Against Defendant**

75. Plaintiff reasserts the allegations set forth in the preceding paragraphs as if fully set forth herein.

76. Plaintiff is female and therefore a member of a protected class under Title VII.

77. Defendant discriminated against Plaintiff in the terms and conditions of her employment on the basis of her gender.

78. Defendant's conduct constitutes intentional discrimination on the basis of gender, with malice or reckless indifference to Plaintiff's federally protected rights.

79. Defendant's conduct constitutes disparate treatment and intentional discrimination of Plaintiff based upon her gender.

80. Throughout November and December 2024, the newly elected Sheriff engaged in discriminatory conduct toward Plaintiff and other senior command staff, including female employees who had served in leadership positions for decades.

81. Plaintiff, as one of the female senior command staff members, was targeted for termination as part of a pattern of discriminatory conduct that adversely affected female employees in leadership positions.

82. The termination was part of a systematic pattern of discrimination that included gender as a factor, as Plaintiff and other female command staff were subjected to public humiliation and termination without legitimate business justification.

11

83. Plaintiff's gender actually played a role in and had a determinative influence in Defendant City of St. Louis' disparate treatment of her and the tangible employment actions taken against her, to include her termination.

84. Plaintiff's gender was, at the very least, a contributing factor in disparate treatment of her and the tangible employment actions taken against her by Defendant City of St. Louis, to include her termination.

85. Management level employees perpetuated the discrimination of Plaintiff based on Plaintiff's gender.

86. In addition, management level employees knew or should have known of the discrimination based on Plaintiff's gender, yet failed to take appropriate corrective action.

87. As a direct and proximate result of Defendant City of St. Louis' actions and/or omissions, Plaintiff suffered intentional discrimination – based upon her gender – at the hands of Defendant City of St. Louis during the course of her employment.

88. As a direct and proximate result of Defendant City of St. Louis' actions and/or omissions, Plaintiff has been, and continues to be, deprived of monetary and non-monetary benefits.

89. As a direct and proximate result of Defendant City of St. Louis' actions and/or omissions, Plaintiff has suffered, and continues to suffer, garden variety emotional distress and other non-medical bill related compensatory damages.

90. By terminating Plaintiff based on her gender, Defendant City of St. Louis, in effect, condoned, ratified, and/or authorized the gender discrimination against Plaintiff.

91. The conduct of Defendant was intentional, malicious, in conscious disregard for the rights of Plaintiff, and showed complete indifference to or conscious disregard for Plaintiff's rights.

92. Plaintiff is entitled to recover all of her costs, expenses, expert witness fees and attorneys' fees incurred herein.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant City of St. Louis for compensatory damages, punitive damages, attorneys' fees and costs, and for such other and further relief as the Court deems just and proper.

**COUNT IV:**
**Disability Discrimination – ADA**
**Against Defendant**

93. Plaintiff reasserts the allegations set forth in the preceding paragraphs as if fully set forth herein.

94. Plaintiff has a medical condition that constitutes a disability under the Americans with Disabilities Act, including a serious health condition requiring significant medical treatment.

95. Defendant discriminated against Plaintiff in the terms and conditions of her employment on the basis of her disability.

96. Plaintiff had a medical condition requiring protected medical leave, which she requested and submitted appropriate documentation for on December 4, 2024.

97. Alfred Montgomery and Plaintiff never spoke regarding Plaintiff's medical condition. This information was submitted to Human Resources and Plaintiff's boss, Sheriff Betts, signed off on Plaintiff's submission and was aware of Plaintiff's disability. It was the obligation of the incoming Sheriff-elect to inquire about staff that he had predetermined he was firing.

98. The timing of Plaintiff's termination—occurring immediately after submission of medical documentation—demonstrates a direct causal connection between her protected medical condition and her discharge.

13

99. Defendant City of St. Louis, through its agents and employees, failed to engage in any interactive process, failed to accommodate Plaintiff's medical condition, and instead terminated her employment because of her disability and/or perceived disability.

100. The Defendant City of St. Louis' conduct constitutes unlawful discrimination based on disability, in violation of the ADA.

101. Plaintiff's disability actually played a role in and had a determinative influence in Defendant City of St. Louis' disparate treatment of her and the tangible employment actions taken against her, to include her termination.

102. Plaintiff's disability was, at the very least, a contributing factor in disparate treatment of her and the tangible employment actions taken against her by Defendant City of St. Louis, to include her termination.

103. Management level employees perpetuated the discrimination of Plaintiff based on Plaintiff's disability.

104. In addition, management level employees knew or should have known of the discrimination based on Plaintiff's disability, yet failed to take appropriate corrective action.

105. As a direct and proximate result of Defendant City of St. Louis' discriminatory acts and omissions, Plaintiff has suffered and continues to suffer lost wages, lost benefits, emotional distress, humiliation, and other compensatory damages.

106. By terminating Plaintiff due to her disability and in retaliation for seeking protected medical leave, Defendant City of St. Louis has condoned, ratified, and/or authorized disability discrimination in violation of the ADA.

107. The conduct of Defendant was intentional, malicious, in conscious disregard for the rights of Plaintiff, and showed complete indifference to or conscious disregard for Plaintiff's rights.

14

108. Plaintiff is entitled to recover all of her costs, expenses, expert witness fees and attorneys' fees incurred herein.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant City of St. Louis for compensatory damages, punitive damages, attorneys' fees and costs, and for such other and further relief as the Court deems just and proper.

**COUNT V:**
**Retaliation – Title VII**
**Against Defendant**

109. Plaintiff reasserts the allegations set forth in the preceding paragraphs as if fully set forth herein.

110. Plaintiff engaged in protected activity by participating in the investigation and termination of Montgomery in December 2019, as a member of the senior command staff responsible for ensuring proper departmental procedures were followed.

111. Plaintiff engaged in protected activity by performing her duties as Training Coordinator, ensuring Montgomery completed required training and certifications, and by participating in the enforcement of departmental policies that ultimately led to his termination.

112. Montgomery, upon assuming office as Sheriff, engaged in systematic retaliation against Plaintiff for her involvement in his prior termination.

113. The newly elected Sheriff made specific statements about getting rid of staff that contributed to his termination in 2019. While Plaintiff is uncertain whether any particular document exists listing her name specifically, the pattern of statements and actions demonstrates targeted retaliation against those involved in his prior termination.

114. Despite false assurances and the passage of time, the timing and circumstances of Plaintiff's termination demonstrate a clear causal connection between her protected activity and the adverse employment action taken against her.

15

115. Plaintiff's protected activity actually played a role in and had a determinative influence in Defendant City of St. Louis' adverse employment actions against her.

116. Plaintiff's protected activity was, at the very least, a contributing factor in Defendant City of St. Louis' adverse employment actions against her.

117. Plaintiff suffered adverse employment action in that she was terminated from employment after engaging in protected activity.

118. Management level employees perpetuated the retaliation against Plaintiff.

119. In addition, management level employees knew or should have known of the retaliation against Plaintiff, yet failed to take appropriate corrective action.

120. There is a causal connection between Plaintiff's exercise of protected activity and her termination from employment.

121. As a direct and proximate result of Defendant City of St. Louis' retaliatory actions, Plaintiff has suffered and continues to suffer lost wages, lost benefits, emotional distress, humiliation, and other compensatory damages.

122. By terminating Plaintiff in retaliation for engaging in protected activity, Defendant City of St. Louis has condoned, ratified, and/or authorized unlawful retaliation in violation of federal law.

123. The conduct of Defendant was intentional, malicious, in conscious disregard for the rights of Plaintiff, and showed complete indifference to or conscious disregard for Plaintiff's rights.

124. Plaintiff is entitled to recover all of her costs, expenses, and attorneys' fees incurred herein.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant City of St. Louis for compensatory damages, punitive damages, attorneys' fees and costs, and for such other and further relief as the Court deems just and proper.

16

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests trial by jury of all issues triable by jury.

Respectfully submitted,

**JUNGLE LAW**

By: */s/ Lauren Sierra Kruskall*
Lauren S. Kruskall #70464
100 S. 4th Street, Suite 550
Saint Louis, Missouri 63102
Tel:314/314-9111
Fax:816/448-3101
lauren@junglelaw.com

and

**LAUREN ALLEN, LLC**

By: */s/ Lauren Perkins Allen*
Lauren Perkins Allen, #49845MO
P.O. Box 8533
Prairie Village, Kansas 66208
Telephone: 816.877.8120
Facsimile: 816.817.1120
Email:  lpa@laurenallenllc.com

**ATTORNEYS FOR PLAINTIFF**

17